UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PLUMBERS & PIPEFITTERS' LOCAL # 562
SUPPLEMENTAL PLAN & TRUST, *et al*., On
Behalf of Themselves and All Others Similarly          No. 08-cv-1713 (ERK) (WDW)
Situated,                                              (Consolidated with 09-cv-3209)

      Plaintiffs,

    v.

J.P. MORGAN ACCEPTANCE
CORPORATION I, *et al*.,

      Defendants.

-----------------------------------------------------------X


# THE RATING AGENCIES' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

| | |
|---|---|
| Joshua M. Rubins | Floyd Abrams |
| James J. Coster | S. Penny Windle |
| SATTERLEE STEPHENS BURKE & BURKE LLP | Adam Zurofsky |
| 230 Park Avenue, 11th Floor | Tammy L. Roy |
| New York, New York 10169 | CAHILL GORDON & REINDEL LLP |
| (212) 818-9200 | 80 Pine Street |
| | New York, New York 10005 |
| *Attorneys for Defendants Moody's Investors Service, Inc. and Moody's Corp.* | (212) 701-3000 |
| | *Attorneys for Defendant The McGraw-Hill Companies, Inc.* |

Martin Flumenbaum
Roberta A. Kaplan
Andrew J. Ehrlich
Tobias J. Stern
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

*Attorneys for Defendant Fitch, Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     PLAINTIFF'S § 11 CLAIMS AGAINST THE RATING AGENCIES SHOULD BE DISMISSED ................................................................................................................. 2

        A.     The Rating Agencies Are Not "Underwriters" Under § 11(a)(5) .......................... 2

        B.     No § 11 Liability Can Be Imposed Based on the Rating Agencies' Ratings ...................................................................................................................... 4

        C.     The Consent Requirements of § 11(a)(4) Preclude Plaintiff's Claims ................... 5

II.    PLAINTIFF'S § 11 CLAIMS AGAINST THE RATING AGENCIES ARE TIME-BARRED ................................................................................................................................. 6

III.   THE ASSERTED RATINGS-RELATED "MISSTATEMENTS" AND "OMISSIONS" ARE NOT ACTIONABLE................................................................................................ 7

IV.   PLAINTIFF IDENTIFIES NO BASIS FOR § 15 LIABILITY AGAINST THE RATING AGENCIES................................................................................................................... 10

CONCLUSION............................................................................................................................12

# TABLE OF AUTHORITIES

**Cases** **Page**

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp.
    2d 155 (S.D.N.Y. 2009) .................................................................................... 8-9

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520
    (6th Cir. 2007) .................................................................................................. 8

*Harden* v. *Raffensperger, Hughes & Co.*, 65 F.3d 1392 (7th Cir. 1995) ........................... 4n

*In re Indymac Mortgage-Backed Securities Litigation*, 2010 WL
    2473243 (S.D.N.Y. June 21, 2010) .................................................................. 7-10

*Iron Workers Local No. 25 Pension Fund* v. *Credit-Based Asset Servic-
    ing and Securitization LLC*, No. 08-cv-10841 ............................................. 3n

*Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) .................................. 5

*In re Lehman Bros. Securities and ERISA Litigation*, 681 F. Supp. 2d
    495 (S.D.N.Y. 2010) ......................................................................................... 2, 11-12

*In re Lehman Bros. Securities and ERISA Litigation*, 684 F. Supp. 2d
    485 (S.D.N.Y. 2010) ......................................................................................... 8, 10n

*McFarland* v. *Memorex Corp.*, 493 F. Supp. 631 (N.D. Cal. 1980) ................................ 6

*New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith
    National Pension Trust* v. *The Royal Bank of Scotland Group,
    PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ................................... 2, 8-10

*New Jersey Carpenters Health Fund* v. *Residential Capital, LLC*, 2010
    WL 1257528 (S.D.N.Y. Mar. 31, 2010) ........................................................ 7-8

*In re Novagold Resources Inc. Securities Litigation*, 629 F. Supp. 2d
    272 (S.D.N.Y. 2009) ........................................................................................ 6

*Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset
    Acceptance Corp.*, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) ........................ 9-10

*Public Employees' Retirement System of Mississippi* v. *Merrill Lynch &
    Co., Inc.*, 658 F. Supp. 2d 299 (S.D.N.Y. 2010) ............................................... 3, 5

*In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y.
    2007) ................................................................................................................ 4

*SEC* v. *Chinese Consolidated Benevolent Ass'n*, 120 F.2d 738 (2d Cir. 1941) .................................................................................................... 3

*SEC* v. *Culpepper* 270 F.2d 241 (2d Cir. 1959) ............................................................... 3

*SEC* v. *G.N. Van Horn*, 371 F.2d 181 (7th Cir. 1966) ...................................................... 4n

*SEC* v. *Holschuh*, 694 F.2d 130 (7th Cir. 1982) .............................................................. 4n

*SEC* v. *Kern*, 425 F.3d 143 (2d Cir. 2005) ...................................................................... 3-4

*Special Situations Fund*, *III*, *L.P.* v. *Cocchiola*, 2007 WL 2261557 (D.N.J. Aug. 3, 2007) .................................................................................... 4n

*In re Tamoxifen Citrate Antitrust Litigation*, 466 F.3d 187 (2d Cir. 2006) .................................................................................................... 2n

*Tsereteli* v. *Residential Asset Securitization Trust* 2006-A8, 692 F. Supp. 2d 387 (S.D.N.Y. 2010) ................................................................ 8

*In re Wells Fargo Mortgage-Backed Certificates Litigation*, 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010) ............................................................. 2-3, 8-11

*Virginia Bankshares*, *Inc.* v. *Sandberg*, 501 U.S. 1083 (1991) .......................................... 8

## STATUTES

Securities Act of 1933

    § 11, 15 U.S.C. § 77k (2006) ................................................................................ 1-10

    § 11(a)(4), 15 U.S.C. § 77k(a)(4) (2006) ............................................................. 5-6

    § 11(a)(5), 15 U.S.C. § 77k(a)(5) (2006) ............................................................. 2-5

    § 15, 15 U.S.C. § 77o (2206) ................................................................................ 1, 9, 10-12

## REGULATIONS

Rule 436(g), 17 C.F.R. § 230.436(g)(2010) ...................................................................... 4-6

## OTHER AUTHORITIES

SEC Release No. 33-6336, 46 F.R. 42024 (Aug. 18, 1981) ............................................... 5

Defendants The McGraw-Hill Companies, Inc., Moody's Investors Service, Inc., Moody's Corp., and Fitch, Inc. (collectively, the "Rating Agencies") respectfully submit this reply brief in support of their motion to dismiss the Consolidated Class Action Complaint (the "AC").

## PRELIMINARY STATEMENT

As plaintiffs have attempted to do in several virtually identical cases, Lead Plaintiff Public Employees' Retirement System of Mississippi ("Plaintiff") seeks here to expand dramatically the scope of liability of the Securities Act of 1933 (the "1933 Act") by redefining the terms "underwriters" and "controlling persons" to include rating agencies. Yet, as ***every court*** to have considered these issues has held, the activities allegedly performed by the Rating Agencies simply do not, as a matter of law, fit the Rating Agencies into these well-defined terms.

First, Plaintiff seeks to expand the reach of the 1933 Act to treat credit rating agencies as "underwriters" under § 11 of the Act. As noted in the Rating Agencies' Opening Brief, each and every court to decide this issue has emphatically rejected this theory as a matter of law. *See* Rating Agencies Opening Brief ("RAs Br.") at 1-2, 5-7. Each of these decisions rejected the same contrived theory advanced by Plaintiff here, and there is no basis for this Court to rule otherwise. *See* Section I. Plaintiff's § 11 claims against the Rating Agencies also independently fail because they are time-barred, and because Rating Agencies' ratings are non-actionable opinions. *See* Sections II and III.

Plaintiff also seeks to expand the 1933 Act to hold the Rating Agencies liable as "controlling persons" under § 15 because, Plaintiff alleges, the Rating Agencies' "active structuring advice gave them the 'power to direct or cause the direction of the management and policies of' the Depositor." Plaintiff's Opposition to the Rating Agencies' Motion to Dismiss ("Pl. Br.") at 2 (citation omitted). Plaintiff's allegations against the Rating Agencies are insufficient as a matter of law to constitute "control" of *anyone*. Indeed, here too, the basic allegation at issue — that the Rating Agencies directed the structure of the Certificates — has been determined to be insuf-

ficient to plead "control" by every court to decide this issue. Plaintiff's § 15 claims here are simply another attempt to distort the 1933 Act beyond permissible bounds. *See* Section IV.

The claims asserted against the Rating Agencies in this case are based on theories that will never be sufficient to subject the Rating Agencies to liability under the 1933 Act and should therefore be dismissed in their entirety with prejudice.[1]

## ARGUMENT

### I. PLAINTIFF'S § 11 CLAIMS AGAINST THE RATING AGENCIES SHOULD BE DISMISSED

#### A. The Rating Agencies Are Not "Underwriters" Under § 11(a)(5)

Plaintiff urges § 11 "underwriter" liability against the Rating Agencies based on allegations that the Rating Agencies "structured" the Certificates "to conform to a specific set of predetermined ratings, and engaged with the Sponsor and the Depositor to design all structural and legal aspects of the Certificates."[2] (Pl. Br. at 13). Plaintiff argues that "but for" the Rating Agencies' role in "structuring" the securities, "the Depositor would not have been able to offer the Certificates for sale." (Pl. Br. at 13-14). As noted above and in the Rating Agencies' Opening Brief, this exact theory based on identical allegations has already been rejected in six other recent cases at the pleading stage. *See* RAs Br. at 1-2, 4-6 (citing, *inter alia*, *In re Lehman Bros. Sec. and ERISA Litig.*, 681 F. Supp. 2d 495, 499 (S.D.N.Y. 2010) (Kaplan, J.)); *accord New Jersey Carpenters Vacation Fund and Boilermaker Blacksmith National Pension Trust* v. *The Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, at *6 (S.D.N.Y. Mar. 26, 2010) (Baer, J.); *In re Wells Fargo Mortgage-Backed Certificates Litigation*, 2010 WL 1661534, at *8 (N. D. Cal.

---

[1] Accordingly, Plaintiff's request for leave to replead (Pl. Br. at 27) should be denied as futile. *See In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("[W]here amendment would be futile, denial of leave to amend is proper.").

[2] While the Rating Agencies dispute the factual allegations of the AC, they have assumed as true, for the purposes of this motion only, Plaintiff's allegations regarding the Rating Agencies' role in the offerings at issue. As demonstrated here and in the Rating Agencies' Opening Brief, however, such allegations do not – as a matter of law – trigger liability under the 1933 Act.

2

Apr. 22, 2010); *Public Employees' Retirement System of Mississippi* v. *Merrill Lynch & Co., Inc.*, 2010 WL 2175875 (S.D.N.Y. June 1, 2010) (Rakoff, J.).[3]

Plaintiff attempts to escape the unanimous finding of these cases by asserting that even if they were correctly decided, "it is Second Circuit precedent, not district court decisions, which bind this Court." (Pl. Br. at 16). That is perfectly true, but Plaintiff omits that the Second Circuit decisions it cites were in fact decided before, and in some instances explicitly taken into account by, the various district court opinions that considered and rejected Plaintiff's theory. *See*, *e.g.*, *Merrill Lynch*, 2010 WL 2175875, at *4 (rejecting plaintiffs' argument, based on *SEC* v. *Kern*, 425 F.3d 143, 152 (2d Cir. 2005), "that the ratings agencies effectively functioned as underwriters here because their evaluations and ratings of the securities here in issue were 'steps necessary to the distribution of [the] securit[ies]" and holding that "[t]his extremely broad view of what constitutes an underwriter is contradicted both by the interpretation of 'underwriter' espoused by the [SEC] and by the statutory definition itself"). Indeed, not one of the Second Circuit decisions — nor any of the other cases — cited by Plaintiff have ever deemed the activities allegedly performed by the Rating Agencies, *i.e.*, "structuring" and the like, sufficient to trigger potential "underwriter" liability under the 1933 Act. Plaintiff's citations merely serve to highlight the requirements that "underwriters" are those who play a role in the *distribution* of securities. *See SEC* v. *Chinese Consol. Benev. Ass'n*, 120 F.2d 738, 739-41 (2d Cir. 1941) (defendant held to be an "underwriter" where it had "solicited the orders, obtained the cash from the purchasers and caused both to be forwarded [to the issuer] so as to procure the bonds."); *SEC* v. *Culpepper*, 270 F.2d 241, 246 (2d Cir. 1959) (defendant broker-dealers held to be underwriters where all purchased the securities in question with a view for resale); *Kern*, 425 F.3d at 152 (entities that purchased shares were underwriters because they "acquired securities from affiliates with a view to

---

[3] The original dismissal order in this case was captioned *Iron Workers Local No. 25 Pension Fund* v. *Credit-Based Asset Servicing and Securitization LLC*, No. 08-cv-10841.

distribution" to the public).[4] As demonstrated in the Rating Agencies' Opening Brief, Plaintiff here has provided no basis whatsoever for any claim that the Rating Agencies participated in the *distribution* of the Certificates.

Moreover, none of the cases Plaintiff cites stand for the asserted proposition that all entities that performed activities allegedly "necessary" to the *creation* of the securities are somehow transformed into underwriters. Plaintiff's elemental "but for" interpretation of § 11(a)(5) would radically enlarge the reach of the 1933 Act, extending the term "underwriter" to every third-party professional that could be said to have contributed in some way to the creation of the securities — even if that party played no role in the actual distribution of those securities. Yet, no court has ever interpreted the term "underwriter" in this manner, and there is simply no basis for doing so. *See, e.g., In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 629 (S.D.N.Y. 2007) (Lynch, J.) (cautioning that "underwriter" is not a "term of unlimited applicability that includes anyone associated with a given transaction").

In short, as the overwhelming weight of authority makes clear, the Rating Agencies' alleged actions here simply do not constitute "underwriting" and Plaintiff's § 11 claims against the Rating Agencies should therefore be dismissed.

**B. No § 11 Liability Can Be Imposed Based on the Rating Agencies' Ratings**

Plaintiff's § 11 claims should also be dismissed for the independently dispositive reason

---

[4] *See also Harden* v. *Raffensperger, Hughes & Co.,* 65 F.3d 1392, 1397-1403 (7th Cir. 1995) (a Qualified Independent Underwriter ("QIU") was an "underwriter" where the QIU was hired as an underwriter, paid as an underwriter, voluntarily and explicitly assumed the liability of an underwriter, performed due diligence as an underwriter would and was publicly presented as an underwriter in the registration statement at issue); *Special Situations Fund, III, L.P.* v. *Cocchiola*, 2007 WL 2261557, at *6, *8-*9 (D.N.J. Aug. 3, 2007) (deciding on summary judgment that certain defendants that had purchased and sold shares were "underwriters" in a case where all defendants had been listed in the prospectus "as underwriters who [had] each agreed to purchase" shares); *SEC* v. *G.N. Van Horn*, 371 F.2d 181, 188 (7th Cir. 1966) (securities dealer and its officers were "underwriters" where "they participated, both directly and indirectly, in the sale of . . . stock" to the public); *SEC* v. *Holschuh*, 694 F.2d 130, 139 n.13 (7th Cir. 1982) (affirming a finding of "participant liability" against an individual deemed to be an "issuer" of securities, and declining to address the further argument that the individual was also a "'controlling person' and an 'underwriter'").

that they are barred by an SEC Rule in effect when the ratings were issued. Pursuant to Rule 436(g), 17 C.F.R. § 230.436(g)(1), the credit ratings of NRSROs, such as the Rating Agencies, are absolutely immune from liability under § 11. Plaintiff incorrectly argues that Rule 436(g) is irrelevant here because it applies only to § 11(a)(4), not claims under § 11(a)(5). (Pl. Br. at 17). There is no such limitation on Rule 436(g). Moreover, Plaintiff's theory would render Rule 436(g) meaningless. As discussed in the Rating Agencies' Opening Brief, the explicit and unambiguous purpose of Rule 436(g) is to "exclude any [NRSRO] whose security rating is disclosed in a registration statement from civil liability under Section 11." SEC Release No. 33-6336, 46 F.R. 42024, 42024, 42026 (Aug. 18, 1981); RAs Br. at 9-10. As Judge Rakoff recently explained in rejecting a similar argument that Rule 436(g) had no application to § 11(a)(5) claims, "[t]his Rule and Release, which are entitled to considerable deference, . . . would be rendered effectually nugatory if ratings agencies were considered statutory underwriters." *Merrill Lynch*, 2010 WL 2175875, at *4 (citation omitted). Indeed, a plaintiff could end-run both the consent requirements of § 11(a)(4) and Rule 436(g) by styling their claim, as Plaintiff does here, as one under § 11(a)(5). Such a construction cannot be countenanced. *See id.*; *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 156 (2d Cir. 2007) (courts "avoid interpreting a regulation in a way that renders one of its provisions meaningless").

### C. The Consent Requirements of § 11(a)(4) Preclude Plaintiff's Claims

Based on the activities Plaintiff alleges the Rating Agencies performed here, it is a prerequisite to any possible § 11 liability that the Rating Agencies have been named to investors as having prepared or certified the Registration Statements and consented to being so named. *See* RAs Br. at 10-13. Plaintiff largely ignores this argument, noting instead that the Rating Agencies "are not being sued as experts pursuant to Section 11(a)(4), but as Section 11(a)(5) underwriters." (Pl. Br. at 17). But Plaintiff misses the point; it cannot simply bypass the consent requirement of § 11 by characterizing the Rating Agencies' conduct as "underwriting" and their claims as ones under § 11(a)(5). This is because § 11(a)(4) not only provides for liability, but also provides clear limitations on that liability for certain defendants, *i.e.,* "experts." *See*

5

*McFarland* v. *Memorex Corp.*, 493 F. Supp. 631, 642-43 (N.D. Cal. 1980) ("[S]ection 11(a)(4) limits liability."). The activities Plaintiff claims the Rating Agencies performed here, *i.e.,* providing opinions, drafting and reviewing documents and advising on aspects of the transaction, are activities that courts evaluate under the "expert" provision of § 11(a)(4). (*See* RAs Br. at 8-11). Thus, to state a viable § 11 claim, Plaintiff was required to allege that the Rating Agencies were named as having prepared some allegedly misleading portion of the Registration Statements and consented to being so named. Plaintiff does not — and cannot — make such an allegation. Plaintiff's § 11 claims against the Rating Agencies therefore must fail for this reason as well.

## II.  PLAINTIFF'S § 11 CLAIMS AGAINST THE RATING AGENCIES ARE TIME-BARRED

Even if the allegations in the AC were sufficient to state § 11 claims against the Rating Agencies (which, as discussed above, they are not), Plaintiff's § 11 claims are subject to dismissal for the independent reason that they are time-barred. Indeed, as made clear on the face of the AC, Plaintiff was on inquiry notice of the claims it asserts over one year before they were filed. (RAs Br. at 13-15).

Plaintiff attempts to counter this point by asserting that none of the publicly-available information relied on in the AC, and made public more than one year before the filing of Plaintiff's claims against the Rating Agencies, specifically identified JP Morgan or the Certificates at issue. (Pl. Br. at 27). Yet, the information that triggers inquiry notice need not speak directly to the securities at issue; rather, the question is whether all "the circumstances would suggest to an investor of ordinary intelligence the probability that she has a cause of action." *In re Novagold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 285 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). Moreover, Plaintiff's allegations purporting to support the alleged falsity of ratings-related and other misstatements in the Offering Documents are also not specific to JP Morgan or any of the individual Certificates. Instead, Plaintiff relies solely on general statements about, *inter alia*, ratings models and procedures, and alleged conflicts of interest in the ratings process,

6

all of which were available more than one year before Plaintiff filed suit against the Rating Agencies. *See* AC ¶¶ 189-208. Plaintiff cannot base its claims on information available more than a year before it filed suit against the Rating Agencies and then assert that the same information did not place it on inquiry notice of its claims. *See In re Indymac Mortgage-Backed Sec. Litig.*, 2010 WL 2473243, at *6 (S.D.N.Y. June 21, 2010) (Kaplan, J.) (a report from the Center for Responsible Lending, published over a year before plaintiffs' complaint was filed and containing "specific facts concerning the allegations at the heart of the [complaint]" was sufficient to trigger the statute of limitations and bar plaintiffs' claim against individual defendant). Plaintiff's § 11 claims against the Rating Agencies are accordingly time-barred and should be dismissed.

### III. THE ASSERTED RATINGS-RELATED "MISSTATEMENTS" AND "OMISSIONS" ARE NOT ACTIONABLE

Beyond the fact the Rating Agencies are not proper defendants here, Plaintiff's claims based on the Rating Agencies' ratings must also be dismissed for the independent reason that such statements are not actionable as a matter of law. At least with respect to its opposition to the Rating Agencies' Motion to Dismiss,[5] Plaintiff continues to base its claims in large part on the Rating Agencies' ratings, *see* Pl. Br. at 18-21, but, as noted above, Rule 436(g) flatly precludes any such claim. (RAs Br. at 9-10). Pursuant to Rule 436(g), an NRSRO's ratings are simply not part of the registration statement for purposes of § 11 liability. Plaintiff's remaining arguments on this point are without merit.

First, ignoring the wealth of authority that has held otherwise, Plaintiff asserts that the Rating Agencies' ratings are not "opinions" but "verifiable factual statements." (Pl. Br. at 22). It is well-established, however, that "credit ratings . . . are clearly opinion statements because

---

[5] Inexplicably, in opposition to the JPMorgan Defendants' Motion to Dismiss, Plaintiff assert that the "[t]he Complaint does not contend that the ratings themselves were false." *See* Plaintiff's Memorandum of Law in Opposition to the JPMorgan Defendants' Motion to Dismiss the Consolidated Class Action Complaint, at 46 n. 42.

they predict future value and reliability, and are not actionable unless it is alleged that the opinions were not truly held." *New Jersey Carpenters Health Fund* v. *Residential Capital, LLC*, 2010 WL 1257528, at *6 (S.D.N.Y. Mar. 31, 2010); *Royal Bank of Scotland*, 2010 WL 1172694, at *14; *Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 394-95 (S.D.N.Y. 2010) (Kaplan, J.); *In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485, 494-95 (S.D.N.Y. Feb. 17, 2010) (Kaplan, J.); *IndyMac*, 2010 WL 2473243, at *11. *See also Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (A "credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors.").

Accordingly, such statements may only be actionable under the securities laws if it is adequately pled that the Rating Agencies did not subjectively believe their rating opinions at the time they were issued. *See Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083, 1095 (1991); *IndyMac*, 2010 WL 2473243, at *11; *Tsereteli*, 692 F. Supp. 2d at 394-95; *Lehman*, 684 F. Supp. 2d at 494-95. Here, the AC affirmatively pleads the opposite, stating that "[t]his action involves solely strict liability and negligence claims and does not allege fraud on the part of any Defendant." (AC ¶ 1). Plaintiff thus has not met, and cannot meet, its burden.

Nonetheless, Plaintiff urges the Court to follow two cases in which, it maintains, courts have "upheld ratings as actionable misstatements." (Pl. Br. at 19-20). First, Plaintiff claims to rely on *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009). (Pl. Br. at 20, 23, 25). In *Abu Dhabi*, a decision that dismissed 10 of the 11 claims asserted against the Rating Agencies, the court sustained a fraud claim where, on the basis of issuance-specific allegations that are simply nonexistent here, it found that "plaintiffs [had] sufficiently pled that the Rating Agencies did not genuinely or reasonably believe that the ratings they assigned . . . were accurate and had a basis in fact." *Abu Dhabi*, 651 F. Supp. 2d at 176. The *Abu Dhabi* court did not dispute that the ratings were opinions, but instead sustained a claim alleging the opinions were not truly held. By contrast, here, Plaintiff has specifically disavowed all allegations of fraud. (AC ¶ 1). Plaintiff cannot be heard both to disclaim all allegations of

8

fraud to exempt themselves from heightened pleading standards *and* to argue that it adequately alleged that the Rating Agencies did not subjectively believe their rating opinions when issued.

Plaintiff next seeks to rely on *Wells Fargo*, 2010 WL 1661534, which dismissed all claims against the rating agencies, including §§ 11 and 15 claims asserting the Rating Agencies were "underwriters" and "controlling persons," but allowed claims based on the ratings to proceed against the remaining defendants because, the court held, the allegations of the complaint were "sufficient to establish an actionable misstatement with respect to the rating process." *Id*., at *12. The Rating Agencies respectfully submit that *Wells Fargo*, which flies in the face of the numerous decisions in this district cited above evaluating virtually identical allegations, was wrongly decided on this point. As noted by Plaintiff, in reaching this holding, the *Wells Fargo* court relied on a 2008 report of the SEC — which simply does not speak to the subjective intent of the rating agencies in rating the offerings here in 2006 and 2007 — and what the *Wells Fargo* court described as "'statements by executives'" of the rating agencies "'in which the executives admitted that they were aware at the time the subject ratings were made that the agencies' rating models were outdated.'" (Pl. Br. at 20). The Rating Agencies maintain that a review of the allegations pled in *Wells Fargo* demonstrates that this mischaracterizes the statements by these executives[6] and, moreover, despite Plaintiff's claims otherwise, these allegations are the very same

---

[6] For example, the *Wells Fargo* cites the testimony of a single former S&P employee that testified that his opinion ***in 2008*** was that a rating model available in 2004 "would have had an earlier warning about the performance of many of the new products." (AC ¶ 198). Plaintiffs omit that the testimony also makes clear that this employee left S&P in April 2005 and thus cannot speak to S&P's ratings models and methodologies used in rating the securities at issue here in 2006 and 2007. *See Credit Rating Agencies and the Financial Crisis: Hearing Before the House Committee on Oversight and Government Reform*, 110th Cong. (2008) (statement of Frank L. Raiter), *available at* http://oversight.house.gov/images/stories/Hearings/Committee_on_Oversight/RaiterTestimony.pdf. Similarly, with respect to Moody's, the *Wells Fargo* court relied primarily on the bare hindsight statement by a Moody's executive that "the rating agencies 'did not update their models or their thinking'" during the relevant period (2010 WL 1661534, at *12) — which in no way even indirectly suggests that any rating agency, *at the time*, disbelieved its own rating opinions or thought that its existing models would result in allegedly "faulty" ratings.

ones rejected in *IndyMac*, *Royal Bank of Scotland* and *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 309-10 (D. Mass. 2009) as insufficient to plead that ratings and ratings-related statements are actionable.

Finally, Plaintiff argues that the Rating Agencies had a duty to disclose allegedly omitted information regarding the Rating Agencies' models and their alleged role in the offerings at issue, asserting that "once a party chooses to discuss material issues," they have a duty to provide complete information.[7] (Pl. Br. at 21 & n. 17). This argument, however, ignores the fact that the Rating Agencies did *not* speak; not one statement in the Registration Statements (beyond the exempted ratings) is attributable to the Rating Agencies. Again it is worth noting that Plaintiff is attempting to impose liability here on the Rating Agencies for statements they simply did not make.

## IV. PLAINTIFF IDENTIFIES NO BASIS FOR § 15 LIABILITY AGAINST THE RATING AGENCIES

Plaintiff's § 15 claims against the Rating Agencies also should be dismissed as a matter of law because Plaintiff has not pleaded, and cannot plead, that the Rating Agencies had the requisite control over any entity. In its Opposition Brief, Plaintiff first argues that the issue of "control" is a "'fact-intensive inquiry'" and should not be resolved on a motion to dismiss. (Pl. Br. at 9). Plaintiff's argument is belied by the wealth of authority cited in the Rating Agencies' Opening Brief in which courts have dismissed deficient § 15 claims as a matter of law on motions to dismiss. (RAs Br. at 22-25).

Plaintiff next inexplicably asserts that "no case that the Rating Agencies cite from this circuit has rejected the theory of control that Lead Plaintiff articulates here." (Pl. Br. at 10).

---

[7] For example, Plaintiff maintains that although it was publicly-known that the Rating Agencies were engaged and paid by issuers, the alleged fact that the Rating Agencies "creat[ed] and structur[ed]" the Certificates somehow altered "the 'total mix' of available information." (Pl. Br. at 24). In *Lehman*, Judge Kaplan considered and rejected the same argument. *See Lehman*, 684 F. Supp. 2d at 492 (holding that the Rating Agencies' alleged "role in structuring the Certificates is not material as a matter of law" and thus "would have added nothing important to the 'total mix' of information available").

This is simply untrue. Plaintiff asserts that the Rating Agencies are "controlling persons" because they allegedly "determined the number of classes or tranches and the amount of credit enhancement" necessary to support the ratings on the securities. (Pl. Br. at 10). This very theory of alleged "control" has been uniformly rejected as a matter of law in every case to decide the issue, including in the Lehman case in this circuit. *See* RAs Br. at 23-24; *Lehman*, 681 F. Supp. 2d at 500-01 (rejecting conclusory allegations that the Rating Agencies "determined which loans were to be included in the securitization, the amount and form of credit enhancement . . . and the Certificate structure" and holding that the "complaint, fairly read, alleges only that the Rating Agencies had the power to influence Lehman" on these issues, which was insufficient to plead control); *Wells Fargo*, 2010 WL 1661534, at *8-*9 ("The fact that the Rating Agencies were able to influence certain portions of the transactions," including allegedly "structuring the Certificates," "is insufficient to plead a control person theory.").

Plaintiff attempts to distinguish *Lehman* by asserting that the opinion only addressed "whether the Rating Agencies controlled Lehman — *i.e.*, the investment bank underwriter" but did not consider whether the Rating Agencies controlled "Structured Asset Securities Corporation," a Lehman affiliate and the "issuer/depositor" of the securities. (Pl. Br. at 10-11). First, irrespective of the specific entity alleged controlled, in *Lehman*, Judge Kaplan rejected the exact theory Plaintiff proffers here, *i.e.*, that "control" may be pled by alleging that the Rating Agencies directed the structure necessary to obtain a certain rating level. Moreover, it was alleged in *Lehman*, as it is here, that the Rating Agencies "controlled" the entity that acted as depositor for the securities. That Judge Kaplan addressed (and rejected) this claim by using the term "Lehman," which he defined at the outset to include Lehman "affiliates and subsidiaries," instead of addressing the issue separately as to each of the different defendants in the case, does not mean, as Plaintiff maintains, that Judge Kaplan "gave no consideration" to the issue of whether the Rating Agencies controlled the depositor (a Lehman affiliate).

Desperately wrenching one phrase in the *Lehman* opinion out of context, Plaintiff also asserts that *Lehman* "applied an erroneous legal standard for control." (Pl. Br. at 11) (asserting that

11

Judge Kaplan required that "Plaintiff must allege that 'decision making power lay entirely with the Rating Agencies'"). A complete review of Judge Kaplan's opinion belies Plaintiff's argument. Indeed, Judge Kaplan makes clear in his opinion that he was comparing the plaintiffs' allegations against the proper standard for pleading control. *See Lehman*, 681 F. Supp. 2d at 500 ("What is required is 'the practical ability to *direct* the actions of people who issue or sell securities.'") (emphasis in original) (citation omitted).

In short, in light of Plaintiff's failure to provide a plausible factual basis to assert the Rating Agencies "controlled" anyone, Plaintiff's § 15 claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, all claims asserted against the Rating Agencies should be dismissed in their entirety with prejudice.

Dated:   July 21, 2010                                           Respectfully submitted,


  /s/ Joshua M. Rubins                                              /s/ Floyd Abrams
Joshua M. Rubins (jrubins@ssbb.com)         Floyd Abrams (fabrams@cahill.com)
James J. Coster (jcoster@ssbb.com)             S. Penny Windle (pwindle@cahill.com)
SATTERLEE STEPHENS BURKE & BURKE LLP    Adam Zurofsky (azurofsky@cahill.com)
230 Park Avenue, 11th Floor                              Tammy L. Roy (troy@cahill.com)
New York, New York 10169                             CAHILL GORDON & REINDEL LLP
                                                                              80 Pine Street
*Attorneys for Defendants Moody's Investors*      New York, New York 10005
*Service, Inc. and Moody's Corp.*

*Attorneys for The McGraw-Hill Companies, Inc.*

  /s/ Martin Flumenbaum
Martin Flumenbaum
(mflumenbaum@paulweiss.com)
Roberta Ann Kaplan (rkaplan@paulweiss.com)
Andrew J. Ehrlich (aehrlich@paulweiss.com)
Tobias J. Stern (tstern@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019

*Attorneys for Fitch, Inc.*

12